UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT LAMB and KATHY LAMB (husband and wife),<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HSC REAL ESTATE, INC., and JIM COOK,<br><br>　　　　　Defendants. | NO. CV-07-0043-EFS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

　　　Before the Court, without oral argument, is Plaintiffs Robert and Kathy Lamb's Motion for Partial Summary Judgment. (Ct. Rec. 14.) Plaintiffs seek an order finding that Defendant HSC Real Estate (HSC) violated the Fair Dept Collection Practices Act (FDCPA) and the Washington Collection Agency Act (CAA) during its collection of unpaid rent and other monies. HSC opposes the motion, contending it acted neither as a debt collector nor as a collection agency during this collection activity. After reviewing the submitted material and relevant authority, the Court is fully informed and denies Plaintiffs' motion for the reasons given below.

///

///

ORDER * 1

**A.   Factual Statement[1]**

On October 1, 2004, Pamela Cordova, the daughter of Robert Lamb and step-daughter of Kathy Lamb, entered into a written lease agreement (Ct. Rec. 19 ¶¶ 3 & 4 & pp. 5-8) for Apartment No. 77 at Linger Lodge, which is managed by HSC on behalf of the property owner in the Spokane Valley (Ct. Rec. 22: Ottesen Decl. ¶ 4). Robert Lamb signed the lease agreement as a co-signer and also signed a separate Co-Signer Agreement. (Ct. Rec. 19 pp. 8 & 9.)

On September 1, 2005, Ms. Cordova entered into a new three-month lease agreement for Apartment No. 77. *Id.* ¶ 5 & pp. 10-14. Mr. Lamb, however, did not co-sign this new lease agreement. In November 2005, Ms. Cordova moved out of Apartment No. 77 without paying past due rent. *Id.* ¶ 6.

On November 22, 2005, HSC commenced a lawsuit in Spokane County Superior Court seeking restitution of Apartment No. 77 and judgment against Ms. Cordova for unpaid rents. (Ct. Rec. 19 ¶ 7; Ct. Rec. 23-2 Ex. 4.)  HSC obtained the requested relief, including a default judgment against Ms. Cordova in the amount of $2,005.00. (Ct. Rec. 19 ¶ 10; Ct. Rec. 22: Ottesen Decl. ¶ 9; Ct. Rec. 23-2 Ex. 5.)

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted declarations, exhibits, and deposition, in the light most favorable to HSC, the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created utilizing this standard.

ORDER * 2

1   HSC sent two collection letters to Mr. Lamb in December 2005 to the
2   Apartment No. 77 address. (Ct. Rec. 23-2 Exs. 6 & 7.) Then, in January
3   2006, HSC sent a collection letter to Mr. Lamb at the address he listed
4   on the Resident Screening Services form when he cosigned the 2004 lease
5   agreement. (Ct. Rec. 19 ¶ 11; Ct. Rec. 23-2 Ex. 8.) Kathy Lamb received
6   the letter on January 27, 2006, and she responded to the letter via
7   certified mail. *Id.* ¶ ¶ 12 & 13. On February 2, 2006, HSC received Mrs.
8   Lamb's letter, disputing the debt and requesting verification of such.
9   *Id.* ¶¶ 13 & 14.

10   Between February 2 and 24, 2006, a representative from HSC called
11   and spoke with Kathy Lamb in an attempt to collect the debt. *Id.* ¶ 16.
12   After this conversation, Mrs. Lamb sent a letter to HSC again seeking
13   verification of the claimed debt. *Id.* ¶ 17. HSC sent another collection
14   letter on February 24, 2006, which Mrs. Lamb received and opened. *Id.*
15   ¶ 18.

16   Plaintiffs filed this lawsuit on February 7, 2007, claiming HSC
17   violated the FDCPA, the CAA, and the Washington Consumer Protection Act.
18   (Ct. Rec. 1.)

19   **B.   Authority and Analysis**

20   1.   Fair Debt Collection Practices Act (FDCPA)

21   Plaintiffs seek an order finding that HSC violated the FDCPA by (a)
22   failing to provide Plaintiffs with the required debt collection notice,
23   (b) attempting to collect a debt after Plaintiffs disputed the debt and
24   before verification, and (c) attempting to collect a debt not owed by
25   Plaintiffs. HSC contends it is not subject to the FDCPA because it was
26   collecting a debt in its role as a creditor and not a debt collector.

ORDER * 3

a.  *Existence of Debt*

Plaintiffs argue there is no debt owed by the Lambs because the unpaid rent was connected to the second lease agreement, which Mr. Lamb did not co-sign, and, even there if there is a debt, it is owed only by Mr. Lamb, not Mrs. Lamb.  This Court finds a genuine issue of material fact as to whether the separate Co-Signer Agreement obligates the Lambs to pay the past-due rent under the second lease agreement.

The Co-Signer Agreement stated:

> The undersigned, Robert Lamb hereafter referred to as "Co-Signer," unconditionally guarantees that he/she/they will be responsible for all rent and other monetary charges incurred by the above mentioned Tenants including, but not limited to attorney's fees owed by Tenant to Owner under the residency as it exists, or *may hereafter be amended* (hereinafter, referred to as "RESIDENCY") *while Tenant resides at the above referenced address*.  Co-Signer promises to promptly pay all relevant charges. Co-signer further agrees that their obligation under this contract will not be changed, diminished or discharged by any of the following, regardless of whether done with or without the Co-Signer's knowledge or consent:
>
> 1.  Any modification, cancellation, release, subordination, renewal or extension of time of any of the Tenant's obligation under the Residency.

There is no dispute that Ms. Cordova continued to reside in Apartment No. 77 and that Mr. Lamb did not cancel or revoke the Co-Signer Agreement. Plaintiffs maintain that Mrs. Lamb was told by the HSC agent that the Co-Signer Agreement was effective for only approximately six months and, therefore, it was ineffective at the time Ms. Cordova signed the second lease agreement. (Ct. Rec. 23: Mrs. Lamb Dep. 8:17-24.)  However, there is no evidence that Mr. Lamb shared this same belief. Accordingly, when the facts are viewed in HSC's favor, the Co-Signer Agreement was in effect in the fall of 2005 and Mr. Lamb was obligated to pay "all rent

ORDER ~ 4

and other monetary charges" incurred by Ms. Cordova's when she renewed her lease for Apartment No. 77.

Mr. Lamb's signature on the Co-Signer Agreement created a presumption of a community obligation. *See Bank of Wash. v. Hilltop Shakemill, Inc.*, 26 Wn. App. 943, 946 (1980). Plaintiffs have the burden of rebutting this presumption by clear and convincing evidence. *Id.* The presumption may be rebutted by showing that Mr. Lamb incurred this obligation without "the intention or expectation, at the inception of the transaction, . . . that a material economic benefit would accrue to the community." *Id.* (quoting *Warren v. Wash. Trust Bank*, 19 Wn. App. 348, 360 (1978)). Here, Mrs. Lamb was aware that Mr. Lamb signed the Co-Signer Agreement because she picked the form up and then returned the signed form. Therefore, when viewing the evidence in HSC's favor, the Court finds a genuine issue of material fact as to whether the Lambs, as a marital community, are obligated to pay the debt.

      b. *Property Management Co. v. Debt Collector*

HSC argues its collection activities are not subject to the FDCPA because it was not acting as a "debt collector" as defined by the FDCPA. Plaintiffs argue HSC is estopped from making this argument given its admissions in the Answer. In its Answer, HSC stated, "[e]ach defendant is a 'debt collector' as defined by FDCPA, 15 USC § 1692a(6)." (Ct. Rec. 11 ¶ 4.) HSC, however, denied violating the FDCPA and, by way of affirmative defense, HSC alleged:

    7.    All actions performed by HSC were in accordance with any and all applicable statutes and regulations.

                . . .

    9.    Plaintiff has duly signed a personal guarantee agreeing to pay the debt of a child of the Plaintiff. At all

ORDER * 5

```
             times relevant herein, Defendant HSC was seeking to
             collect on the debt under the terms and provisions of
             such personal guaranty.

     10.  The amounts owed by the Plaintiff or Plaintiffs under the
          terms and provisions of the personal guaranty, should be
          treated as a setoff against any amounts which are found
          to be owed by the Defendant HSC to the Plaintiffs herein.
```

*Id.* ¶¶ 15, 7, 9 & 10. Although HSC's response in ¶ 4 should have been limited (e.g. "although generally each defendant is a 'debt collector' as defined by FDCPA, 15 U.S.C. § 1692a(6), they are not debt collectors for purposes of the instant collection activity"), the Answer in its entirety notified Plaintiffs that HSC believed that Plaintiffs owed a debt to HSC upon which it was collecting. Therefore, the Court finds HSC may argue it is not a debt collector in this transaction.

The FDCPA defines a "debt collector" as:

```
any person who uses any instrumentality of interstate commerce
or the mails in any business the principal purpose of which is
the collection of debts, or who regularly collects or attempts
to collect, directly or indirectly, debts owed or due or
asserted to be owed or due another.  Notwithstanding the
exclusion provided by clause (F) of the last sentence of this
paragraph, the term includes any creditor who, in the process
of collecting his own debts, uses any name other than his own
which would indicate that a third person is collecting or
attempting to collect such debts. . . .  This term does not
include--
                         . . .
(F) any person collecting or attempting to collect any debt
owed or due or asserted to be owed or due another to the extent
such activity . . . (iii) concerns a debt which was not in
default at the time it was obtained by such person; . . . .
```

15 U.S.C. § 1692a(6). Plaintiffs contend that the debt was owed to the owner of Linger Lodge and, therefore, HSC was collecting a debt owed to another. When viewing the facts in HSC's favor, the Court finds otherwise. The owner of the Linger Lodge gave HSC the right to collect the rents; in fact, it was HSC's obligation to collect rents and other charges under the property management agreement with Linger Lodge. (Ct. ORDER ~ 6

Rec. 22 ¶ 4.)  Consistent with this property management agreement, the lease agreements state, "THIS AGREEMENT is made and entered into this [date] by and between the Owners of the above named Apartment Community acting through their agent, HSC Real Estate, Inc., a Washington corporation ("Owner") and the above named Resident(s)." (Ct. Rec. 23-2 p. 28.)  Thus, the term "Owner" as used in the lease agreements and the Co-Signer Agreement includes HSC.  *See Matter of Estates of Wahl*, 99 Wn.2d 828, 831 (1983) ("Documents executed together . . . are to be construed together."). Therefore, HSC was a creditor[2] because it obtained the right to collect the rents owed to Linger Lodge before the rent was past due.  *See Reynolds v. Gables Residential Servs.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006); *Berndt v. Fairfield Resorts, Inc.*, 339 F. Supp. 2d 1064, 1068-69 (W.D. Wis. 2004); *Alexander v. Omega Mgmt., Inc.*, 67 F. Supp. 2d 1052, 1055 (D. Minn. 1999); *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 254-56 (S.D.N.Y. 1998); *Azar v. Hayter*, 874 F. Supp. 1314, 1318-19 (N.D. Fla. 1995).  *C.f. Hartman v. Meridian Financial Services*, 191 F. Supp. 2d 1031, 1042 (W.D. Wis. 2002). Therefore, because HSC used its own name to collect the debt, the exclusion found under subsection (F) of § 1692a(6) applies.[3]

---

[2] A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4).

[3] This exception is allowed because "property managers . . . have as strong an incentive as creditors to maintain their reputation in the community in order to encourage existing and new tenants and landlords to conduct business with them." *See Franceschi*, 22 F. Supp. 2d at 254.

ORDER ~ 7

For these reasons, the Court denies Plaintiffs' request for a summary judgment ruling in their favor on the FDCPA claim.

2. <u>Washington Collection Agency Act (CAA)</u>

Plaintiffs seek an order finding that HSC violated the CAA[4] by attempting to collect a debt Plaintiffs did not owe and by threatening to impair Plaintiffs' credit rating and to take legal action. HSC responds that the CAA is inapplicable because it was acting as a property management company rather than a collection agency.

Initially, as set forth above, the Court finds a genuine issue of material fact as to whether the Lambs are obligated to pay the unpaid debt. Also, the Court finds the Answer sufficiently notified Plaintiffs of the personal guarantee signed by Mr. Lamb and that HSC was defending this case on the grounds that it had the ability to collect this debt pursuant to the personal guarantee. Therefore, the Court finds HSC is not estopped from arguing that it is a collection agency.

The CAA regulates collection agencies. RCW 19.16 *et al.* A "collection agency" does not include:

> (c) Any person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: Trust companies; savings and loan associations; building and loan associations; abstract companies doing an escrow business; *real state brokers; property management companies collecting assessments, charges, or fines on behalf of condominium unit owners associations, associations of apartment owners, or homeowners' associations;* public officers acting in their official capacities; persons acting under court order; lawyers; insurance companies; credit unions; loan or finance companies; mortgage banks; and banks;

---

[4] RCW 19.16.250.

ORDER * 8

RCW 19.16.100(3)(c) (emphasis added). When viewing the evidence in HSC's favor, the Court finds HSC was acting as a property management company and, therefore, is excluded from the definition of a "collection agency" under RCW 19.16.100(3)(c). Accordingly, the Court denies Plaintiffs' motion for summary judgment on the CAA claim.

**C.  Conclusion**

For the reasons given above, **IT IS HEREBY ORDERED:** Plaintiffs' Motion for Partial Summary Judgment **(Ct. Rec. 43)** is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this ____19th____ day of February 2008.


                                S/ Edward F. Shea
                                EDWARD F. SHEA
                            United States District Judge

Q:\Civil\2007\0043.msj.fdcpa.wpd

ORDER * 9